Jeffrey E. Goldman, Esq.
THE LAW OFFICES OF JEFFREY E. GOLDMAN
260 Madison Ave., 15th Floor
New York, NY 10016
Phone: 212-983-8999
Fax: 646-693-2289

Darren P.B. Rumack
THE KLEIN AND CARDALI LAW GROUP
39 Broadway, 35th Floor
New York, NY 10006
Phone: 212-344-9022
Fax: 212-344-0301
*Attorneys for Plaintiffs and proposed FLSA collective plaintiffs and Rule 23 class.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **GABRIEL TEPEPA, LEONEL NOCELO, ELKHOUAS LAIDI, JOSE FARIA and JOSE LUIS ALBERTO MUNOZ,** *on behalf of themselves and those similarly situated,* | **COLLECTIVE ACTION and RULE 23 CLASS ACTION COMPLAINT** |
| **Plaintiffs,** | **INDEX NO. 24-1838** |
| - against - | **Jury Trial Requested** |
| **THE RIBBON WORLDWIDE 44 LLC d/b/a BACALL'S RESTAURANT, and KENNETH STURM,** | |
| **Defendants.** | |

Gabriel Tepepa, Leonel Nocelo, Laidi Elkouas, Jose Faria and Jose Luis Alberto Munoz

("Plaintiffs"), on their own behalf and on behalf of others similarly situated, by their attorneys,

The Law Office Of Jeffrey E. Goldman and The Klein and Cardali Law Group, PLLC, allege as

follows:

## NATURE OF THE CASE

1.      This is a class and collective action brought by Plaintiffs on their own behalf and

on behalf of a proposed collective identified below.  Plaintiffs, and the proposed collective, were

or are employed as food service workers (i.e., servers, bussers, runners, barbacks and bartenders) by The Ribbon Worldwide 44 LLC d/b/a Bacall's ("Bacall's"), and Kenneth Sturm ("Sturm") (collectively "Defendants").

2.      This action is brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., ("FLSA") and the New York Labor Law § 190 *et seq*. ("NYLL") to recover unpaid minimum wages, unlawfully misappropriated tips, and other monies.

3.      Defendants have failed to compensate their food service workers at the federal and state minimum wage, and unlawfully misappropriated a portion of their tips.

4.      Plaintiffs seek injunctive and declaratory relief against Defendants' unlawful actions, return of the tip credit (i.e. the difference between the full applicable minimum wage and the hourly wage Defendants actually paid to their food service workers), return of the misappropriated tips, return of unpaid wages, liquidated damages, interest, and attorneys' fees and costs as permitted in accordance with the FLSA and NYLL.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b), and 28 U.S.C. § 1331 and 1337, and has supplemental jurisdiction over Plaintiffs' NYLL claims pursuant to 28 U.S.C. §§ 1332 and 1367.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1331, as the location of Bacall's, the restaurant where Plaintiffs worked, is in the Southern District of New York.

## PARTIES

7.      Plaintiff Tepepa, a resident of New York State, was employed by Defendants from September 2022 through March 2023.  Tepepa was employed as a busser, runner and barback.  Throughout his employment, he was paid $10.00 per hour

plus tips.  Tepepa typically worked 5 days per week, he typically worked from 4:00 pm until 11:00 pm, and occasionally, he would work from 11:00 am until 11:00 pm.

8.     Plaintiff Nocelo, a resident of New York State, was employed by Defendants as a bartender.   Throughout his employment, he was paid $10.00 per hour plus tips.

9.     Plaintiff Elkhouas Laidi, a resident of New Jersey, was employed by Defendants from November 2022 through March 2023.  Laidi was employed as a server. Throughout his employment, he was paid $10.00 per hour plus tips.  Laidi typically worked Tuesday through Saturday from 3:00 pm until 10:00 or 11:00.

10.     Plaintiff Faria, a resident of New Jersey, was employed by Defendants from 2022 until February 2023 as a server.  Throughout Faria's employment, he was paid $10.00 per hour plus tips.  Faria typically worked 5 days per week, from Wednesday through Sunday from 3:00 pm until 10:30 or 11:00 pm.

11.     Plaintiff Munoz, a resident of North Carolina, was employed by Defendants in 2023 as a runner and food expediter.  Throughout Munoz' employment, he was paid $10.00 per hour plus tips.  Munoz typically worked 5-6 days per week, from 10:00 am until 10:00 or 11:00 pm (Friday through Sunday), and from 3:00 pm – 10:00 pm (Tuesday, through Thursday) and typically worked 2 days per week as an expediter and 3 days per week as a runner.

12.     Plaintiffs were Defendants' employees within the meaning of the FLSA and NYLL.

13.    Defendant Bacall's is a New York limited liability company that owns and operates Bacall's, a restaurant located at 220 West 44th Street, New York, New York, 10036.

14.    Upon information and belief, Defendants jointly and individually have an annual gross volume of sales in excess of $500,000.00.

15.    Defendant Sturm is an owner and operator of Bacall's, and has been an active manager with authority to control the pay practices and employment policies.

16.    Sturm controls the employees' records and rate of pay.

17.    Sturm is in the business on a regular basis.

18.    Sturm answers comments, complaints and posts online. Exhibit 1.

a. On February 7, 2024, Ken S. Business Owner posted "Alicia thank you for taking the time to post a thoughtful review. The staff looks forward to hearing positive feedback. Hope you had a great night out in NYC."

b. On November 1, 2023, Ken S. Business Owner posted "Christina- Thank you so much for the very kind works. Most of the staff reads these reviews and they really take pride in what they do. We strive to not be a tourist trap in our location with scratch cooking and training that goes on all of the time. It really warms the heat to see this in print and th picture that you posted are very nice and we thank you for doing that as well."

c. On July 17, 2023 Ken S. Business Owner posted "Thank you for taking the pictures and providing the comments. We will tell Wrica you mentioned her which is really nice. The note about the mule is interesting because we have plenty of copper mugs so we'll check what happened during the shift. Feedback like that is

very helpful to small business operators. Please keep up the good positive work! Thanks again."

19.    Sturm describes himself as a restaurateur and owner of Bacall's and is frequently quoted in the press, including lobbying for a casino to be built in Times Square.[1]

20.    Sturm filed for Bacall's liquor license application with New York State on June 15, 2018 and is listed as the principal owner of Bacall's on the application with 62% of the shares of the LLC.

21.    In New York State, a liquor license grants the owner or possessor of the premises control over the food and beverage. *See* N.Y. Alco. Bev. Cont. Law § 106(1). These facts are sufficient to establish his right and ability to supervise the infringing activities.

22.    The rules and regulations associated with the liquor licensing process inherently creates a collaborative relationship between the business and the principal officer's authority to provide a service as it relates to food and beverages.

23.    An individual's name listed as a principal on a liquor license suggests a general ability to supervise the establishment's operations and enjoy its profits.

24.    An individual's name listed a principal on a liquor license also suggests that he keeps and maintains adequate records of all transactions involving the business transacted by such licensee, which shows the amount of alcoholic beverages, in gallons,

---

[1] Fight for Final NY Casino License Pits Steve Cohen Against Times Square Caesar's Palace – NBC New York
How Broadway Theater Owners Are Trying to Block a Times Square Casino - The New York Times (nytimes.com)
At Bacall's, Dani Luv leads the Yom Kippur break fast (forward.com)

purchased by such licensee, together with the names, license numbers and places of business of the persons from whom the same were purchased, the amount involved in such purchases, as well as the sales of alcoholic beverages made by such licensee.

25. According to the New York State Liquor Authority Handbook for Retail Licenses, the licensee is responsible for the activities of employees and patrons in all parts of the licensed premises, even if not always physically present.

26. According to the New York State Liquor Authority Handbook for Retail Licenses, the licensee must keep adequate records of all transactions involving the licensed business, including records concerning employees (whether full or part time).

27. According to the New York State Liquor Authority Handbook for Retail Licenses, the licensee is subject to disciplinary action whether he, or an employee, serves a visibly intoxicated person or minor, and accordingly is recommended to train employees concerning service of alcohol.

28. In applying to hold a liquor license, the applicant must confirm the location of where alcohol is stored.

29. The liquor license holder has a direct or indirect economic interest in the establishment.

30. In applying to hold a liquor license, the applicant must confirm whether the restaurant has a full kitchen and will serve full entrée-like meals, and must provide a diagram of the premises.

31. At all relevant times, corporate Defendants have been and continue to be an "employer" engaged in "commerce" and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.

32.    Defendants are engaged in interstate commerce, as numerous items that are used in the restaurant on a daily basis are goods purchased outside of New York.

33.    For example, Bacall's sells alcohol manufactured in Florida and Puerto Rico in the restaurant like Bacardi Rum and other beverages and numerous other products in the restaurant are manufactured in foreign countries, like Cointreau and Chambord, which are manufactured in France. Plaintiffs' servers served Bacall's patrons drinks made from these beverages. Plaintiffs handle these products when the patrons order them or when they are stocking them in the restaurant.

34.    Bacall's employed the Plaintiffs and other workers who handle goods or materials that have moved or been produced in interstate commerce, like beef, chicken, eggs, ketchup and many other food products grown, raised or manufacturer.

35.    All Defendants are hereinafter collectively referred to as "Defendants."

## COLLECTIVE ACTION ALLEGATIONS

36.    Plaintiffs bring their FLSA claims on behalf of themselves and similarly situated employees (i.e., servers, bussers, runners, barbacks and bartenders) who are, or have been employed by Defendants in the three years preceding the filing of this Action.

37.    The members of the FLSA collective have been victims of Defendants' common policies and practices which have denied Plaintiff and the collective of the full minimum wage and earned tips.

38.    The FLSA Collective consists of servers, runners, bussers, barbacks, and bartenders who during their employment at Bacall's, fell into the category of "tipped employees," who customarily earned more than $30.00 per month in tips and were

required by Bacalls to participate in a tip-pooling system whereby all of Bacall's guests' tips were aggregated and shared pursuant to a formula described herein.

39.    As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs and the FLSA collective by engaging in a pattern, practice and policy of violating the FLSA.   This pattern, practice and policy includes:

    a.   Depriving food service workers of the tips they earned;

    b.   Improperly taking a tip credit toward food service workers' wages;

    c.   Redistributing portions of the tips earned by food service workers to expediters, and other individuals who were not entitled to tips pursuant to the FLSA and NYLL;

    d.   Failing to make timely payments of wages;

    e.   Making unlawful deductions from wages.

40.    Defendants have engaged in unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees' compensation by willfully and knowingly violating the FLSA.

41.    The FLSA collective would benefit from the issuance of a court supervised notice of the present lawsuit and the opportunity to join this action.

42.    The identities of these similarly situated employees are or should be known to Defendants and are locatable through Defendants' business records.

**<u>CLASS ACTION ALLEGATIONS</u>**

43.    Pursuant to Rule 23 of Federal Rules of Civil Procedure, Plaintiffs bring this lawsuit as a class action on behalf of all food service employees who are employed or who have been employed by Defendants within six years prior to the filing of this Complaint.

44.    **Numerosity**:  The potential number of persons in the Class is so numerous that joinder of all members would be unfeasible and impractical.  The disposition of their claims through this class action will benefit both the parties and this Court.  The number of persons in the Class is unknown to Plaintiffs at this time; however, it is estimated that the number exceeds 50 individuals.[2]

45.    **Commonality and Typicality**:  The claims of Plaintiffs (for violations of the FLSA and NYLL based on their maintenance of an invalid tip pool and illegally paying Plaintiffs and the class a rate of below the minimum wage) is typical of the claims of all of the other members of the Class because all of them sustained similar injuries and damages arising out of Defendants' common course of conduct in violation of law and the injuries and damages of all of the other members of the Class were caused by Defendants' wrongful conduct as described in this Complaint.

46.    **Ascertainable Class**:  The proposed Class is ascertainable in that its members can be identified and located using information contained in Defendants' payroll and personnel records.

47.    **Adequacy**:  Plaintiffs are adequate representatives of the Class; will fairly protect the interests of the other members of the Class; have no interests antagonistic to the members of the Class; and will vigorously pursue this suit via attorneys who are competent, skilled and

---

[2] Bacall's 2018 liquor license application lists the restaurant as having 125 employees.

experienced in litigating matters of this type.  Class Counsel is competent and experienced in litigating large wage payment class actions.

48.  **Superiority**:  The nature of this action makes the use of the class action vehicle a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the other members of the Class for the wrongs alleged herein, as follows:

a.  This case involves a large corporate Defendant and a large number of individuals with many relatively small claims and common issues of law and fact

b.  If each individual member of the Class was required to file an individual lawsuit, Defendants would necessarily gain an unconscionable advantage because, with its vastly superior financial and legal resources, it would be able to exploit and overwhelm the limited resources of each individual member of the Class;

c.  Requiring each individual member of the Class to pursue an individual remedy would also discourage the assertion of lawful claims by members of the Class who would be disinclined to pursue an action against Defendants because of an appreciable and justifiable fear of retaliation;

d.  The Prosecution of separate actions by the individual members of the Class, even if possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual members of the Class against Defendants; would establish potentially incompatible standards of conduct for Defendants, would result in legal determination with respect to individual members of the Class which would, as a practical matter, be

dispositive of the interest of the other members of the Class who are not parties to the adjudications; and/or would substantially impair or impede the ability of the members of the Class to protect their own interests;

e. The claims of the individual members of the Class may not be sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses thereto;

f. Furthermore, as the damages suffered by each individual member of the Class may be relatively small, the expense and burden of individual litigation would make it difficult of impossible for individual member of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action; and

g. The costs to the court system of adjudication of such individualized litigation would be substantial.

## **FACTS**

49. The FLSA and NYLL allow employers of "food service workers" to pay their tipped employees at a rate below the normal federal and state minimum wages by applying a tip credit towards certain eligible employees' wages.

50. The FLSA and the NYLL provide that in order to be eligible for this tip credit, employers of tipped employees must inform food service workers about their intention to apply the tip credit towards the employees' wages and also must allow employees to keep all of the tips that they receive.

51. Managers and other non-service employees are prohibited from sharing in the tips received by the "food service workers."

11

52.    The FLSA and NYLL permit employees to participate in a tip pool where tipped employees combine all of their tips together and then redistribute them amongst themselves.

53.    At all relevant times, the tip pool at Bacall's was structured as follows:

    a.   8 points allocated to servers;

    b.   5 points allocated to runners;

    c.   4 points allocated to bussers;

    d.   8 points allocated to bartenders;

    e.   1 point allocated to barbacks.

### BACALL'S MAINTAINS AN ILLEGAL TIP POOL

54.    At all times relevant hereto, Defendants established and imposed a tip pool upon Bacall's food service workers, and also required the food service workers to share a percentage of their tips with the food expediter.

55.    By mandating the participation of the food expediter in the tip pool, Defendants have violated both the FLSA and NYLL.

56.    At Bacall's, the chef ("Rafael") required one of the runners to act as an expediter during each shift.

57.    The food expediter works and stands in front of the kitchen, making sure that the orders are properly prepared and sent out timely.

58.    The expediter puts orders together for the runners to take out to the patrons.

59.    The expediter also had to help prepare and garnish plates for the runners to take to tables.

60.    The expediter would be responsible for restocking the garnishes, and preparing additional garnishes during the shift.

12

61.     At the end of the shift, the expediter would breakdown the garnish station, putting away all of the various garnishes.

62.     While working as an expediter, the employee had no contact with customers.

63.     The expediter would spend the entire shift in front of the kitchen.

64.     The expediter would be listed as a runner on the tip sheet and was still paid $10.00 plus tips.

65.     The food expediter is excluded from the definition of the FLSA collective.

66.     Bacall's also owns and operates a nightclub at the same address called Blue.[3]

67.     Bacall's would have barbacks spend several hours per shift in Blue getting mixers prepared in large trash cans for use at the nightclub.

68.     The barbacks also had to clean the basement and wash the floor at Blue.

69.     The barbacks did not receive tips from Blue, but would receive tips from Bacall's tip pool, even though they were not working for Bacall's during these shifts.

70.     During the Christmas holiday season in 2022, Plaintiff Tepepa was assigned to work at Blue (starting around October 2022).

71.     At Blue, Tepepa would typically start preparing a batch of drinks, getting ice and washing cups starting around 4:00 pm for 5 or 6 hours before going back upstairs at Bacall's, where he would work as a busser for the remainder of his shift (generally until 11 pm).

72.     At Blue, Tepepa did not interact with customers.

73.     By these and other acts, Defendants have taken gratuities belonging to Plaintiff and the FLSA Collective and unlawfully diverted them to non-service staff who are not entitled to

---

[3] New York City | Nightclub | Blue Midtown

share in the tip pool at the restaurant, thereby preventing the food service workers from retaining all of the tips left for them in violation of the FLSA and NYLL.

74.     Because Defendants established an illegal tip pooling scheme at Bacall's, they are not entitled to take advantage of the tip credit and reduce the minimum wages of Plaintiff and the FLSA Collective by applying the tip credit allowance that is available under the FLSA and the NYLL.

## BACALL'S VIOLATES THE 80/20 RULE

75.     Defendants violated the FLSA's 80/20 rule by requiring employees to work more than 2 hours or spend 20% of their shift doing work that directly supports work performed by a tipped employee and work that is not part of the tipped occupation.

76.     During the week, Plaintiffs would typically arrive for their evening shifts at 3:00 pm and do 30 minutes of side work prior to the scheduled family meal time.

77.     After the kitchen closed around 10:00 pm, Plaintiffs would typically have another 30-60 minutes of side work.

78.     Plaintiffs were still paid at the $10.00 per hour rate for this time.

79.     Plaintiffs were forced to do excessive amounts of directly supporting work of tipped employees ("side work") including at the beginning of each shift for approximately 30 minutes (prior to the food service starting): setting up the restaurant's tables, preparing bread and butter, preparing garnishes placing silverware and napkins on tables, polishing silverware, setting up service stations, and preparing wines.

80.     After the kitchen was closed at the end of the night, usually for another 30-60 minutes, Plaintiffs were forced to do more side work, such as breaking down the dining room after

parties, cleaning the coffee machines, refilling ketchup and mayo cups and wiping down the refrigerators.

81.    Defendants would also send employees to Blue to prepare mixers for drinks for 4 or 5 hours per shift and then include them in the tip pool.

82.    Defendants should have kept track of the time that Plaintiffs worked doing "side work" and "tip ineligible work."

## BACALL'S SHAVES EMPLOYEES TIME

83.    Defendants would automatically deduct 30 minutes from Plaintiffs for meal breaks, even if the employee did not take the meal break.

84.    On some occasions, Plaintiffs would be too busy to take the meal break and have to continue setting up the restaurant for the evening's service.

85.    Defendants conducted the pre-shift meeting while employees were clocked out for family meal.

86.    Defendants would still deduct 30 minutes from Plaintiffs in those instances.

87.    Defendants would always apply meal deductions to Plaintiffs' paychecks even if they did not eat the meal.

88.    On occasion, when Plaintiffs would clock out for a meal and forgot to clock back in, they would not be paid for the rest of their shift.

## FIRST CAUSE OF ACTION
### FLSA – Unpaid Minimum Wages

89.    Plaintiffs repeat and incorporate by reference all allegations in all preceding paragraphs.

90.    Defendants are employers within the meaning of 29 U.S.C. §§ 203(e) and 206(a).

91.     Defendants were required to pay Plaintiff and the FLSA Collective the applicable federal minimum wage rate for all hours worked.

92.     Plaintiffs were not paid all of their hours worked because Defendants "shaved time" or reduced the number of hours reported on their payroll records below the number hours that they actually worked.

93.     Defendants were aware of, or should have been aware that the practices described in this Complaint were unlawful and did not make a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective.

94.     As a result of Defendants' willful violations of the FLSA, Plaintiffs and the FLSA Collective suffered damages to be determined at trial and are entitled to the recovery of such amounts and liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, costs, and other damages pursuant to the FLSA.

## SECOND  CAUSE OF ACTION
### FLSA - Violation of the 80/20 Rule, 29 C.F.R. § 531.56

95.     Plaintiffs repeat and incorporate by reference all allegations in all preceding paragraphs.

96.     Plaintiffs and Collective Members frequently worked longer than 2 hours or more than 20% of their shift doing side work or tip ineligible work.  29 U.S.C. §201 et. seq.

97.     Employers may only take a tip credit for work performed by a tipped employee that is part of the employee's tipped occupation. 29 C.F.R. § 531.56.

98.     Plaintiffs were required to spend more than 2 hour or 20% of their time doing directly supporting work ("side work"), including setting napkins, cleaning silverware, stocking or making coffee, set up and breakdown of water stations, setting service stations, breaking down

service station, bussing tables, setting up and breaking down ice, collecting dirty napkins, setting

tables, wiping down tables and surfaces. 29 C.F.R. § 531.56(f)(3).

99.    Plaintiffs and Collective Members were employed in "dual jobs."  29 C.F.R. §

531.56(e).

100.    Employees should be paid the regular minimum wage while performing tip

ineligible work which includes assisting with cleaning dishes, wiping down the refrigerators,

setting up and breaking down the dining room, moving tables and chairs, cleaning coffee machines

refilling ketchup and mayo bowls and making mixers for the other bar. *See* 29 C.F.R. §

531.56(f)(5).

101.    Plaintiffs and Collective Members often worked longer than 30 minutes at a time

doing side work.  29 C.F.R. § 531.56(f)(4).

102.    Defendants failed to keep track of this time and separate out the time spent doing

side work and tip ineligible work.

103.    As a result of Defendants willful violations of the FLSA, Plaintiffs and the FLSA

Collective seek to recover wages for the time that Plaintiffs and Collective members spent doing

directly supporting work and tip ineligible work which exceeded the threshold for the law,

liquidated (double) damages, attorneys' fees and costs, prejudgment interest and post judgment

interest and such other legal relief as this Court deems just and proper.

### THIRD CAUSE OF ACTION
### NYLL – Unpaid Minimum Wages

104.    Plaintiffs repeat and incorporate by reference all allegations in all preceding

paragraphs.

105.    Defendants are employers within the meaning NYLL §§ 190, 651(5), 652 and the

supporting New York State Department of Labor regulations, and employed Plaintiffs.

17

106.    Defendants were required to pay Plaintiffs the applicable minimum wage rate under the NYLL.

107.    Defendants were not eligible to avail themselves of the tipped minimum wage rate under the NYLL because, *inter alia*,

a.    Defendants were required to but failed to provide the required tip credit notice under the NYLL;

b.    Defendants unlawfully distributed portions of the tips received by Plaintiffs and the FLSA Collective to employees in positions that do not customarily and regularly receive tips, in violation of the NYLL and its supporting regulations; and,

c.    Defendants illegally made impermissible deductions in the amount of tips given to Plaintiff and the FLSA Collective.

108.    Defendants were aware of or should have been aware that the practice described in this Complaint were unlawful and did not make a good faith effort to comply with the NYLL with respect to the compensation of Plaintiffs.

109.    As a result of Defendants' willful violations of the NYLL, Plaintiffs suffered damages to be determined at trial and are entitled to the recovery of such amounts and liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, costs, and other damages pursuant to the NYLL.

**FOURTH CAUSE OF ACTION**
**NYLL – Unlawful Tip Deductions**

110.    Plaintiffs repeat and incorporate by reference all allegations in all preceding paragraphs.

111.    NYLL § 196-d prohibits employers or their agents from demanding or accepting directly or indirectly any part of the gratuities received by an employee, or retaining any part of a gratuity or any charge purported to be a gratuity for an employee.

112.    Defendants unlawfully retained tips from Plaintiffs and unlawfully redistributed their tips to non-tip eligible employees like the expediters and the bussers who worked in the nightclub, Blue.

113.    As a result of Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover from Defendants their unpaid tips, reasonable attorneys' fees, liquidated damages, and pre-judgment interest and post-judgment interest.

### FIFTH CAUSE OF ACTION
### NYLL - Violation of the 80/20 Rule, N.Y. Comp. Codes R. & R. tit. 12 §146-2.9

114.    Plaintiffs repeat and incorporate by reference all allegations in all preceding paragraphs.

115.    N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.9 provides that employer shall not require an employee to work longer than 2 hours or 20% of the day doing non-tipped work.

116.    On any day that Plaintiff or Class Members worked at doing work which directly supports tip work and tip ineligible work (a) for two hours or more; or (b) for more than twenty percent (20%) of his or her shift, whichever is less, the wages of the employee shall be subject to no tip credit for that day.  N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.9.

117.    Plaintiffs' directly supporting tip work and tip ineligible side work often exceeded 2 hours a day or 20% of their shifts.

118.    Upon arrival at the restaurant for their shifts, Plaintiffs often had more than 20-30 minutes of side work to complete.

119.    Plaintiffs often had to do another 30-60 minutes of closing side work before they could leave at the end of the shift after the kitchen closed.

120.    As a result of Defendants' willful and intentional unlawful conduct, Defendants are liable to Plaintiffs for the tip credit wage for each day that Plaintiffs worked longer than 2 hours or 20% of their day doing side work, lost wages, liquidated damages and other damages along with costs and attorneys' fees, pre-judgment interest, post-judgment interest, all other damages available under New York law, and such other legal relief as the Court deems just and proper.

**SIXTH CAUSE OF ACTION**
**New York Labor Law-Record Keeping Violations**

121.    Plaintiffs repeat and incorporate by reference all allegations in all preceding paragraphs.

122.    Defendants failed to make, keep and preserve accurate records with respect to Plaintiff, including hours worked each workday, and total hours worked each week, as required by the NYLL and its supporting regulations.

123.    Defendants failed to provide Plaintiffs with accurate wage statements as required by NYLL § 195(3) of the Wage Theft Prevention Act.

124.    Defendants issued wage statements containing numerous inaccuracies including using the tip credit wage when it should have included the regular minimum wage, and other violations contrary to the requirements of NYLL § 195(3).

125.    Defendants wage notices incorrectly lists the tip credit wage as the "regular" wage for all hours worked, including for hours when Plaintiffs should have been paid the regular minimum wage, because they were performing non-tip credit eligible work.

126.    Defendants' paystubs also did not include off-the-clock work, when Plaintiffs were forced to work through their unpaid meal breaks; therefore, they did not reflect actual hours worked by Plaintiffs.

127.    This caused the Plaintiffs to believe they were being paid according to the law and not question their defective wage statements and Defendants' unlawful pay practices.

128.    Due to Defendants' failure to provide accurate wage notices, Plaintiffs suffered "concrete, downstream injuries," in the form of deprivation of adequate wages, because it prevented Plaintiffs from discovering that Defendants were systematically underpaying them in the form of the incorrect tip credit rate.

129.    Defendants' failure to make, keep and preserve accurate records was willful.

130.    As a result of Defendants' willful and unlawful conduct, Plaintiffs are entitled to an award of damages, in an amount to be determined at trial, costs and attorneys' fees, as provided by NYLL § 198.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that judgment be granted awarding Plaintiffs:

(a)    Compensatory damages;

(b)    Liquidated damages;

(c)    Prejudgment interest;

(d)    Attorneys' fees and costs; and

(e)    Such other legal and equitable relief as the Court deems necessary and proper.

Dated: February 19, 2024
         New York, New York


                            THE LAW OFFICES OF JEFFREY E.
                            GOLDMAN

21

By:    /s/ Jeffrey E. Goldman
        Jeffrey E. Goldman
        260 Madison Ave., 15th Floor
        New York, NY 10016
        Phone: 212-983-8999
        Fax: 646-693-2289


THE KLEIN AND CARDALI LAW GROUP
PLLC

By:    /s/ Darren Rumack
        Darren P.B. Rumack
        39 Broadway, 35th Floor
        New York, NY 10006
        Phone: 212-344-9022
        Fax: 212-344-0301

*Attorneys for Plaintiffs and proposed FLSA
collective plaintiffs and Rule 23 class*